IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DONALD WESTMORELAND,          )
                              )
        Petitioner,            )
                              )
    v.                        )    1:10CV705
                              )
MICHAEL T. BELL,              )
                              )
        Respondent.            )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On October 4 and 5, 2000, after a jury trial in the Superior Court of Stokes County, Petitioner was convicted of one count of larceny and one count of breaking and/or entering in case 99 CRS 004651 and was determined to have obtained the status of a habitual felon in case 00 CRS 00274. (See id. at 1-2; Docket Entry 5-2 at 16, 19.) Petitioner originally received a sentence of 150 to 189 months of imprisonment in a consolidated judgment containing the breaking and/or entering and larceny convictions and a consecutive sentence of 150 to 189 months of imprisonment for being a habitual felon. (Docket Entry 5-2 at 22-25.) The North Carolina Court of Appeals reversed the sentence(s) because the habitual felon determination simply increased the punishment applicable to the underlying offenses of breaking and/or entering and larceny; it did not constitute a separate offense. (Docket Entry 5-5 at 3-4.) On remand, Petitioner was sentenced to 150 to 189 months of imprisonment for the breaking and/or entering conviction and a

consecutive 121 to 155 months of imprisonment for the larceny conviction. (Docket Entry 5-8 at 12-15.)

Petitioner filed a second direct appeal, but it ended unsuccessfully when the North Carolina Supreme Court denied review after the North Carolina Court of Appeals issued an unpublished opinion finding no error in the resentencing. State v. Westmoreland, 358 N.C. 549, 673 S.E.2d 358 (2004). Petitioner next sought relief through a motion for appropriate relief that was signed on July 17, 2003, and filed in Stokes County sometime thereafter. (Docket Entry 5-12.) That motion was denied on December 17, 2003. (Docket Entry 5-13.) Petitioner then filed a petition for certiorari with the North Carolina Court of Appeals, which that court dismissed without prejudice on March 1, 2004. (Docket Entry 5-16.) Petitioner did not refile his petition for certiorari, but instead, on March 15, 2004, filed a "Notice of Appeal Based on a Constitutional Question" and a "Petition for Discretionary Review" with the North Carolina Supreme Court, which that court construed as petitions for certiorari and denied on June 24, 2004. (Docket Entry 5-18.)

Petitioner next filed a petition for a writ of habeas corpus under § 2254 through counsel in this Court on September 22, 2005, in case 1:05CV829, which the Court dismissed on February 16, 2006, at Petitioner's request, in order to allow him to exhaust his state court remedies. (1:05CV829, Docket Entries 10, 12, 14.) Neither Petitioner nor his attorney thereafter filed anything in any court for nearly three years, until Petitioner's attorney filed a second

motion for appropriate relief in Stokes County on December 15, 2008. (Docket Entry 5-20.) Upon the denial of that motion, Petitioner sought further review by the North Carolina Court of Appeals, which denied certiorari on February 27, 2009. (Docket Entry 5-24.)

Petitioner continued his pursuit of relief in the state courts by filing a petition for habeas corpus in Stokes County on June 30, 2009. (Docket Entry 5-25.) After that petition was denied, he sought a writ of certiorari from the North Carolina Court of Appeals and, later, discretionary review from the North Carolina Supreme Court, which denied his petition on June 16, 2010. (Docket Entries 5-29, 5-31.) Petitioner then dated his current Petition to this Court as submitted to prison officials for mailing on September 6, 2010, but signed it as completed and had it notarized on August 17, 2010. (Docket Entry 1 at 14.) The Court received the Petition on September 14, 2010. (Id. at 1.) Respondent has filed a Motion for Summary Judgment (Docket Entry 4), Petitioner has responded (Docket Entry 7), and Respondent's Motion for Summary Judgment now comes before the Court for a decision.

## **Petitioner's Claims**

The Petition raises the following five claims for relief:

1) North Carolina's habitual felon law violated Petitioner's right to be free from double jeopardy because it used felony convictions for which he had already been punished to establish his status as a habitual felon (Docket Entry 1 at 6);

2) the habitual felon law violated Petitioner's right to equal protection because it allowed prosecutors to pick and choose which offenders are prosecuted as habitual felons (id. at 7);

3) Petitioner's lengthy consecutive sentences as a habitual felon amounted to cruel and unusual punishment (id. at 9);

4) the deconsolidation of Petitioner's breaking and/or entering and larceny convictions at his resentencing violated N.C. Gen. Stat. § 15A-1335 which prohibits an increased sentence upon resentencing (id. at 11); and

5) Petitioner received ineffective assistance of counsel because no objection was made to the constitutionality of the habitual felon statute or his illegal resentencing (id., Ex. 1 at 6-8).

## Statute of Limitations

Respondent has sought summary judgment because the Petition is time-barred under 28 U.S.C. § 2244(d). Although Respondent's arguments concerning the timeliness of the Petition appear well-taken, they involve a number of complicated and somewhat unsettled issues. On the other hand, Petitioner's claims can more easily be disposed of on other grounds set out in Respondent's summary judgment brief. The limitation period in § 2244(d) is not jurisdictional, so the Court may proceed to other arguments. Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002). Given all of these circumstances, this Recommendation will not consider the statute of limitation issue further, but will instead address Respondent's other summary judgment arguments.

## Standards of Review

Where the state courts adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. "Unreasonable" is not the same as "incorrect" or "erroneous" and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. Id. at 409-11. As for questions of fact, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, Petitioner's claims were considered on their merits by the state courts. (Docket Entries 5-11, 5-13, 5-21, 5-26.) Therefore, the standards just set out will be applied to Petitioner's claims.

## **Discussion**

Petitioner's first three claims for relief assert that North Carolina's habitual felon law violated his right to be free from double jeopardy, his right to equal protection under the law, and his right to be free from cruel and unusual punishment, respectively. These claims were considered and rejected by the North Carolina Court of Appeals, which noted that North Carolina's appellate courts had previously denied such claims on both state and federal grounds. (Docket Entry 5-11 at 2.) The United States Supreme Court also has repeatedly upheld statutes which punish recidivism in this fashion, including against challenges based on "double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities." Spencer v. Texas, 385 U.S. 554, 559-60 (1967) (citing cases). It has also denied a cruel and unusual punishment claim under circumstances much more extreme than the present case. See, Lockyer v. Andrade, 538 U.S. 63 (2003) (rejecting challenge to two consecutive sentences of 25 years to life under "three strikes" law for petty theft of $150 worth of videotapes from two stores).

Petitioner's convictions and sentences based on his status as a habitual felon in no way constituted double jeopardy, a denial of equal protection, or cruel and unusual punishment. More

-6-

importantly, the state court decision denying his claims was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Petitioner's first three claims for relief should be denied.

Petitioner's fourth claim for relief alleges that the sentences he received at resentencing violated N.C. Gen. Stat. § 15A-1335, which provides in pertinent part that, "[w]hen a conviction or sentence . . . has been set aside on . . . direct review or collateral attack, the court may not impose a new sentence for the same offense . . . which is more severe than the prior sentence . . . ." It is intended to be a general embodiment of North Carolina v. Pearce, 395 U.S. 711 (1969), overruled in part by Alabama v. Smith, 490 U.S. 794 (1989). See Official Commentary to N.C. Gen. Stat. § 15A-1335. Petitioner raised this claim in the state courts and had it denied, at least alternatively, on the merits. (Docket Entry 5-21.)

Here, Petitioner received an original total sentence of 300 to 378 months of imprisonment. His total sentence after remand was 271 to 344 months of imprisonment, or 29 to 34 months lower than his original sentence. Petitioner complains that the new sentence resulted from a deconsolidation of his breaking and/or entering and larceny convictions, but North Carolina law and N.C. Gen. Stat. § 15A-1335 permits such action. See State v. Ransom, 80 N.C. App. 711, 713-14, 343 S.E.2d 232, 234, cert. denied, 317 N.C. 712, 347 S.E.2d 450 (1986). In this case, Petitioner did not receive a haarsher total sentence upon remand and, therefore, the state

court's decision to deny his instant claim easily passes muster under the applicable standards of review. See Hagans v. Korneygay, No. 5:10HC3005FL, 2010 WL 3835140, at *5-7 (E.D.N.C. Sept. 29, 2010) (unpublished) (finding no violation of Pearce where state court changed manner of consolidation upon resentencing but petitioner received lesser total sentence). Petitioner's fourth claim for relief should be denied.

Finally, Petitioner has not presented his fifth claim for relief clearly, but instead has referred the Court to "Amendment No. #1." (Docket Entry 1 at 1-10.) He has filed no amendments to his Petition, but his first attachment to his Petition consists of a copy of his state court habeas corpus petition, in which he set out a claim of ineffective assistance apparently based on the allegation that, on resentencing, his counsel should have raised the substance of the first four grounds for relief that appear in his instant Petition. (See Docket Entry 1-1 at 6-8.) The state court denied the petition that contained that ineffective assistance claim. (Docket Entry 5-26.)

This Court must review an ineffective assistance of counsel claim by using a two-part test:

> In order to establish an ineffective assistance of counsel claim . . . [a petitioner is] required to establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [Strickland v. Washington, 466 U.S. 668, 688 (1984)], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a

-8-

breakdown in the adversary process that renders the result unreliable." Id. at 687, 104 S.Ct. 2052.

In determining whether counsel's performance was deficient, "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689, 104 S.Ct. 2052. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks omitted).

Similarly, in evaluating whether the defendant has shown actual prejudice from any such deficient performance, it is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." Id. at 693, 104 S.Ct. 2052. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. When challenging a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S.Ct. 2052.

Fisher v. Lee, 215 F.3d 438, 446-447 (4th Cir. 2000).

Here, Petitioner has not demonstrated ineffective assistance of counsel. As explained previously, none of Petitioner's first four claims has merit. There would have been no reason for counsel to raise these meritless claims at his resentencing. Likewise, Petitioner could not have been prejudiced by the failure to raise them. Petitioner's fifth claim for relief should be denied.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be granted, that the Petition

(Docket Entry 1) be denied, and that Judgment be entered dismissing this action.

                                          /s/ L. Patrick Auld
                                               **L. Patrick Auld**
                                    **United States Magistrate Judge**
October 4, 2011